VERA PAULOS v. C. FREDERICK KOELSCH AND ANOTHER. YELLOW TAXI COMPANY OF MINNEAPOLIS, APPELLANT.[1]

December 13, 1935.

No. 30,471.

[1]Reported in 263 N. W. 913.

*Ossanna, Hall & Hoaglund* and *Charles E. Carlson,* for appellant.
*Thomson & Williams,* for respondent.

HOLT, JUSTICE.

Plaintiff sued appellant for an injury received while being carried as a passenger in one of its cabs in the city of Minneapolis, and recovered. The appeal is from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The short facts are these: About 2:30 o'clock a. m. of December 31, 1932, plaintiff and three other persons entered one of appellant's cabs at 111 South Ninth street, Minneapolis, to be carried to Loring Cafe, on the east side of Nicollet avenue, between Fourteenth street and Grant street. The cab in its travel came to Fourteenth street, drove west thereon to Nicollet, then north toward Loring Cafe, about 80 feet from the corner. As the driver came into Nicollet he found cars parked at the curb so that he could not unload his passengers at the sidewalk. He stopped outside the parked cars, about two or three feet from them. This left the cab about the same distance east of the easterly street railway track. The street was icy and exceedingly slippery. The driver dismounted on the left side of the cab, went to the rear thereof, and opened the right-hand rear door to let the passengers out. Plaintiff was seated on the left folding seat and another young woman to her right. The latter stepped out, and, as plaintiff arose to follow, an automobile, coming into Nicollet the same way as the cab, in attempting to pass to the left thereof, encountered the east streetcar rail or parallel ice ruts against which the front wheels slid, and, on applying the brakes, the sliding was accelerated so that the right front bumper of Koelsch's car hit the left rear bumper of the cab, throwing the open door of the cab against plaintiff's head, inflicting the injury for which she recovered $1,000 as general damages, and $209.95 as special damages for medical services and hospital expenses.

Appellant assigns as error the refusal to grant judgment notwithstanding the verdict. Its motion for a directed verdict had been denied. This assignment presents the troublesome question in the case. The only claim of negligence on the part of the driver of the cab which can in reason be made is that he stopped at a place where, owing to the icy condition of the street, a vehicle coming up

behind him could neither stop nor turn out, and therefore was likely to bump into the cab. There was some testimony that when the cab was first stopped one of the passengers directed the driver's attention to a space a short distance ahead where they might get nearer to the curb, and that they were discussing the matter a few minutes before the door was opened to let anyone out. Appellant in operating the cab was a common carrier of passengers, and, as such, its duty was to exercise the highest care under the existing conditions for the safety of plaintiff. To stop at a place where other vehicles were likely to bump into the cab and injure a passenger therein, or one in the act of entering or departing therefrom, could be considered negligence. The rails of streetcar tracks, especially when approached on a slanting angle, are apt to divert an automobile from its course. The driver of the automobile here involved, Mr. Koelsch, testified that when he tried to pass over the rails the front wheels slid along, and when the brakes were applied the car could neither be stopped nor its course changed. The danger was in stopping so near the streetcar rail that other vehicles could not pass without encountering the streetcar rail and precipitate a collision. We conclude that it was for the jury to determine whether the driver of appellant's cab was negligent in stopping where he did on the occasion in question.

Appellant's counsel assigns as error that he was not permitted to inquire on cross-examination of plaintiff what her occupation was. Ordinarily the question would be proper; but not in this instance, for it appears that plaintiff's attorney, in his opening statement to the jury, had stated that she was a prostitute, and the only complaint counsel makes is that he was not permitted to cross-examine her on that subject. Surely she was entitled to the same general damages as any other woman for her physical injuries, and the special damages pleaded and proved did not relate to her occupation but were confined to hospital and medical expenses.

Error is assigned because the court permitted the jury to determine whether the appellant violated 1 Mason Minn. St. 1927, § 2720-3(a), reading:

"No person shall operate or halt any vehicle upon a highway carelessly or heedlessly in disregard of the rights or safety of others or in a manner so as to endanger or be likely to endanger any person or property."

We deem the testimony to have justified the application of this statute, and from the brief we gather that appellant does not complain so much on this account as of the refusal of the court to read § 2720-24 (a), particularly that part which forbids the parking of a motor vehicle so that there is not 15 feet free space of the pavement to the left for the passage of other vehicles, appellant having brought out the fact that between the cab and the cars parked on the other side of Nicollet avenue there was considerably more than 15 feet of clear space. We think this assignment of error is of no avail. There was no written request to read this last statute to the jury. But after the charge was finished appellant's counsel requested the court to read § 2720-24 (a) to the jury, and a discussion was had between court and counsel wherein the court stated that subd. (a) did not apply to city streets, and the argument is here made that this was prejudicial because the jurors heard the discussion. Counsel cannot inject error, which will result in a new trial, by arguing a legal question to the court within the hearing of the jury. Moreover, it is evident that the statute was not intended to make every parking legal which leaves more than 15 feet clear space to the left of a parked or stopped car for the free passage of other vehicles. Nor did such space to the left have any bearing on this accident. Koelsch was unable to pass over the first three feet to the left of the cab.

Error is assigned upon the reception of any evidence touching the special damages pleaded and the submission thereof to the jury. The contention is that plaintiff's husband is liable for the services rendered by the doctor, nurse, and hospital in treating her for the injuries she sustained, and therefore he alone may sue and recover of the one who wrongfully inflicted the same; and that plaintiff cannot recover therefor, although the evidence shows that they have for five years lived apart and that he has not contributed any to her support. Appellant cites Belyea v. M. St. P. & S. S. M. Ry. Co. 61

Minn. 224, 63 N. W. 627. We consider the question decided in plaintiff's favor by what was said in Fink v. Baer, 180 Minn. 433, 230 N. W. 888, where the syllabus is:

"A married woman who assumes the liability and pays for medical attendance and nursing is entitled to recover the reasonable value of such services from the defendant whose negligence caused her injury."

There is nothing to show that the credit was extended to the husband. Plaintiff apparently requested the services of the nurse, doctor, and hospital. 2 Mason Minn. St. 1927, § 8618, provides that every married woman "may make any contract she could make if unmarried, and shall be bound thereby," and it is not a violent implication that by accepting the care and treatment of the doctor, nurse, and hospital plaintiff agreed to pay therefor. At any rate, a payment of the special damages herein by appellant would be a perfect defense in case plaintiff's husband should attempt to sue appellant for these services rendered the wife, even if his continued separation for five years and neglect during that time to support her should not debar him from suit.

Appellant took exception to the failure of the court to submit the defense of plaintiff's contributory negligence to the jury, and Fox v. Minneapolis St. Ry. Co. 190 Minn. 343, 251 N. W. 916, is cited. That case and the instant one are not parallel on the facts. There the order of the trial court for judgment notwithstanding the verdict in favor of the streetcar company was sustained on the ground that its negligence was not established, and arguendo it was stated that the plaintiff therein knew and observed all that the conductor could know and see in respect to the automobile, and, since the jury absolved her from contributory negligence, the same facts should have absolved the streetcar company. In the instant case the only thing which appellant could possibly claim as evidence of contributory negligence was that plaintiff rose from her seat to alight without looking to the rear to see whether an oncoming vehicle might bump the cab. We think the record is barren of any evidence which required the submission of the defense of contrib-

utory negligence. Ordinary care of a passenger alighting from a public cab does not require him to look to the rear to ascertain that no other vehicle is about to collide with the cab.

Appellant claims that there was error in permitting Dr. Larson to give a diagnosis of plaintiff's injury based in part on history, citing Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199. A cursory examination of that case will convince any reader of this record that in this trial there was no violation of the rules there stated. Those rules have been applied in Sund v. C. R. I. & P. Ry. Co. 164 Minn. 24, 204 N. W. 628, and Strommen v. Prudential Ins. Co. 187 Minn. 381, 245 N. W. 632. In the instant case Dr. Larson testified, without objection, as to his first attendance upon plaintiff on January 6, 1933:

"I first examined her at the Eitel Hospital, and of course I first took a history of the case and examined her physically. Her complaint at that time was headache, pain in the abdomen, pain in the right side of the head, pain in the pit of the stomach, nausea and vomiting. The physical findings were those of multiple contusions or black and blue marks. She had a swelling on the right side of her head and over the right eye extending over the parietal region, over on the right side of the head. And she had a slight discoloration over the epigastrium."

After some further examination, this question was asked:

"Doctor, how did you diagnose her head injury?

A. "Both from the history and from the findings which would indicate—

Q. "Just how you diagnosed it, is what I want.

Mr. Carlson: "To which we object on the ground that it is based upon the history. We object to any diagnosis based upon the history upon the ground that it [is] based upon hearsay and incompetent testimony.

The Court: "Objection overruled. * * *

The doctor answered: "As concussion of the brain."

There is nothing in what took place to indicate whether or not the doctor based his diagnosis on her history, nor is there any evi-

dence as to what history she gave. Appellant in the cross-examination of the doctor made no attempt to ascertain what, if any, history was considered in arriving at the diagnosis. There is not a particle of testimony to dispute the fact that plaintiff received a severe blow on her head. She bore visible evidence thereof when Dr. Larson first attended her. No error is shown in the admission of Dr. Larson's testimony.

It is assigned as ground for a new trial that the damages are excessive, appearing to have been given under the influence of passion and prejudice. There was no evidence to dispute the special damages proved by plaintiff and the amount thereof. The general damages of $1,000 cannot be considered excessive. Appellant offered no evidence, lay or medical, to show that plaintiff was not injured. Appellant's driver, directly after the accident, took her to the Eitel Hospital for examination and whatever treatment was necessary. Appellant did not see fit to call the doctor who there examined or treated her. Plaintiff called the night nurse she there employed after she had been at the hospital for six days. The nurse corroborated plaintiff and Dr. Larson that she had a head injury. There was nothing in the trial to excite the jury's passion or prejudice as against appellant.

The order is affirmed.

STONE, JUSTICE, took no part.